Our next case is Benitec Australia v. Nucleonics The issue of this case is whether jurisdiction over an invalidity declaratory judgment counterclaim continues where the patentee has made statements in public to the investing community that the defendant is infringing. There is an intervening ruling from the Supreme Court in the Integra case. Why isn't SuperSAC right on line with what happened here? SuperSAC is different. What's different? I think it's particularly on page 1057 of SuperSAC. I got it. Just a second. The district court in SuperSAC had concluded that there was a future covenant not to sue. In this case, there is not. And if you look at SuperSAC, for the plaintiff reports that it has unconditionally promised not to sue the defendant in the future on the patents in suit. Now, the situation here is very different because we do not have that type of covenant not to sue here. Don't they dismiss with a covenant not to sue on anything that had transpired in the past? Isn't that the whole basis for Benitec's dismissal? No. They dismiss without prejudice. And they give a covenant that says for past events, but that type of activity. So anything that was at stake is now excused. They're not going to sue on anything that happened before the dismissal order. No, I don't think that's exactly right. Did I miss something? Maybe I'm not being clear. The type of activity that they are saying before this date, if that activity went on, before this date, we will not sue you. They're not saying that if we come out of the safe harbor on that exact same activity, they won't sue. And they are not saying that activity which was in the record of animal work, which is not within the safe harbor, will not be sued on going forward. So there is no future covenant. So there's no protection for past animal work, is what you're saying? Well, I think for past animal work, as I read their last covenant in their last brief, before that date, they do say they will not sue for anything before that date, as I understand it. So we're solely concerned with possible future infringement. We are concerned with current infringement, and we are concerned with future infringement in a case where they've already sued us. I think if I might comment on this. By the way, the patent is to preventing hepatitis B in humans, isn't it? I'm sorry? Isn't the patent looking at human treatment? No, their patent is not about hepatitis B. It is not limited to human treatment. Their patent is, by their own words, a broad patent that has method claims in it, and it talks specifically about just about any DNA method for this type of RNA interference to silence genes in animals, humans, anything. And they have never said that as a technological matter, we do not infringe. They've simply said, temporarily, under the Supreme Court's Integra case, we can't sue you right now. For human work. For the human work. Yeah. Yes. I think that's right. But Integra has nothing to do with the animal work. I think that's right. What difference do you see, if any, between what they've promised not to do and a dismissal with prejudice of the action? In other words, if they dismissed with prejudice the action instead of dismissing it without prejudice, do you see a distinction between the effect? I think there is. I think that a dismissal with prejudice would mean that this activity, it would be tantamount to a decision that this activity as a technological matter does not infringe. We walk away. And that's it. I think that they have never said that. We are still at jeopardy going forward. And they could, quite frankly, sue tomorrow. But I think, if I might, kind of redirect the discussion a bit. But they haven't. Why still are you in any reasonable fear of a suit? On this reasonable apprehension, we're in a discussion about the two-prong analysis, which I think is part of this analysis. But I think Fort James is another part of it. On the two-prong analysis, the district court found that there was reasonable apprehension. That's a finding that's never been appealed. So the only question on the two-prong analysis is whether that second prong, whether there's meaningful activity, meaningful preparations for infringing activity, is going forward. And on that second prong, which is, again, the only thing really at issue in this appeal, the question there is did the judge use the right standard. His only statement in that opinion, his only statement in that opinion, is that we don't have a product. We are investing millions and tens of millions of dollars to bring products to market. And we are in reasonable apprehension. They've sued other people. They've continuously said to the public and said to investors that we infringe. And so there is absolutely apprehension. The only question is on the second prong of that test, in fact, did he use the right standard? And all he looked at was products. Well, it seems to me there are two possible controversies here. One is over the animal work. And as to that, the statute, there's no safe harbor under the statute, right? So you claim that you have to worry about doing animal research as well as selling an animal product, correct? That would be right. And the second possible controversy relates to human products. And in that respect, the statute gives you protection for the research but not for the ultimate product. Yes. Put it to one side, the animal research question. Is there a sufficient immediacy to the controversy over the possible future human product? I believe there is. And I think that, again, we're still in the two-prong analysis. But there are tens of millions of dollars at stake here that are being invested and the search for additional funding to bring that forward. Yeah, I understand. But what do I find in the record that tells me that the work toward a human product in the future is being inhibited by the threat of suit? Well, in the record, there is evidence that we have had difficulty and have had failures in partnering with other large pharmaceutical companies that would have helped further that research along because they raised questions about the very issue of Benetech and infringement. Well, where do I find an affidavit that says we can't raise money because we're concerned about this is on the human side only? Where does it say we can't raise research money because we're concerned about that a product that we might develop in the future would be the subject of infringement? The declaration on this was at A1408 to 1413. I don't have the right site in front of me. But if I could, I will come back to that. If I could address one other point here, the Integra case, again, is a temporary holding off of infringement. It does not say- Well, I understand the Integra case. I understand what it does. And you're saying that after all the research is done, we want to produce a product. We're concerned we're going to be sued about the product. And I understand that this is an interesting argument. The question is what's the support for in the record? I think there's two points. And I think that, for instance, at A1411, there's a discussion from the CEO of Nucleonics in discussions with other pharmaceutical and biotech companies. That's clearly discussions regarding human work, regarding hepatitis. There wouldn't be discussions with pharmaceutical and biotech companies about these veterinary issues, which are a separate issue. And the second point on this is that our entire effort technologically is not going to change. It is what they say is infringement. When the district court said- Is this the sum and substance of it, this one sentence in paragraph 50? There's more in there, and it goes on. There's no specific example of a venture capitalist that said, I won't give anybody- I think there's a discussion with the Series B funding where it was a serious issue where someone, as I recall it, walked away. Again, that would be in this in 1408 to 1413. Was this after Merck or before Merck? This would have been before Merck. But there are also discussions after Merck. It strikes me that you've got to have evidence in the record that post-Merck that there was a problem in raising money because of a concern about suit over future human products. Put aside the animal question. The question is, where does this record show post-Merck concern about this issue? I believe it does show that. It is a continuing issue for this company, and that is my understanding of it. Having said that, though- You've got to come to oral argument knowing the record. That's what's valid. It is in there. Well, but that's not sufficient. You've got to be able to show it, though. There's one other- Do you want to preserve your remaining rebuttal time, Mr. Latham? That's fine. Okay, thank you. Mr. Chambers? May it please the Court, Article 3, the Constitution limits judicial power- I think we've read that. On the animal side, you've got a problem, right? Because the statutory safe harbor doesn't provide any protection to them. I don't think you're wrong. But wait, wait, okay? So they're saying that even as to the research on the animal side, we have to worry about a suit relating to that, and they have put in evidence about animal research plans. And what's the response to that? Why isn't that sufficient to create an immediate concern about what they're doing? I think there are two responses to that. The first is that the Supreme Court didn't change the law. The Supreme Court clarified the law. And what that means to us is that when this suit was filed, there was no jurisdiction. And when there is no jurisdiction, this Court has a lot- I don't understand what you're saying. I'm asking a specific question about the concern about animal research. And they put in evidence that there's no protection, right, under Merck for animal research. That is not the case. But let me be clear what we're meaning by animal research. I'm not talking about animal research to achieve a human product. I'm talking about animal. When I use animal research, I'm talking about research to produce an animal product. There's no protection for that under Merck, right? There is statements under Merck that go along with the declaration that was put in by nucleonics. Nucleonics told district court, and what they said to the district court was, we are going to put in all information about animals when we file this- But you're not answering my question. My question is a simple one. Under Merck, there's no protection for research to produce an animal product, right? That is incorrect. The Supreme Court has said explicitly that if it was reasonable to put it into the IND, then it falls under the safe harbor. And when nucleonics said to that court, said to Judge Farnham, that we are going to put this information into our IND, that had to be taken at its face value. And the important thing is, this is a very new technology. I don't understand what you're saying. What's an IND? I'm sorry, investigational new drug. Except for the FDA. It is with the FDA. But the FDA doesn't approve animal drugs, does it? It doesn't, but if you're going to tell the FDA about your animal studies, and it was reasonable to tell the FDA about those animal studies to obtain approval- Yeah, but the simple question is, does Merck protect research to produce animal products? The answer is no, right? If that research is going to be part of a filing for the FDA- For a human product. That research- You're reading Merck pretty broadly, aren't you? Merck specifically says that if it was appropriate to include in a submission to the FDA, then it is reasonably related. And while it may be that you are doing two things, that you are trying to obtain the rights to work in humans, at the same time you're doing research with animals or on animals, if you're going to put that into the IND, you are going to be- Let me ask it this way. Let's assume that I'm correct, that Merck doesn't protect research for animal products. You may disagree with that, but let's assume that that's true. And let's assume that they are engaging in research for animal products right now. Under those two assumptions, which you may disagree with, is it not correct that there's a case or controversy that the second prong is satisfied, the immediacy prong is satisfied? I would disagree that the immediacy prong is satisfied. Why is that not satisfying? This court has held that periods as short as nine months from coming up with something that would infringe are periods where you are not going to- But you're not accepting my hypothetical. I'm saying right now they say we're doing animal research, point one. And point two is Merck doesn't protect that. Okay? Isn't the immediacy prong satisfied if that's true? If they fall within the claims and they are not going to use that information in humans, that would seem to be correct. Okay. So then here we, again, assume that I'm correct, that Merck doesn't protect the animal products. Why aren't we in a situation where they have stated that they're going to be engaging in animal research in sufficient detail to satisfy the second prong? Because, Your Honor, for two reasons. The first is that when they said that they were going to be doing animal research, they also said we're going to be putting that into our IND. But they didn't say when they were going to even start the animal research. They said in May, about a year after this was filed, that they were talking about having a confidentiality agreement. A confidentiality agreement is what normally is entered into before you even talk technology, and that does not indicate an offer for sale. It does not indicate anything about price or amounts or delivery date or anything that this court has held is an important aspect of an offer for sale. So it doesn't seem like that is sufficient. Why is offer for sale the test under the second prong here? What case says that? Because they have no product. What case says that? No case says offer for sale is, but that would seem to be the very first thing that can occur. That before I can actually enter into an agreement to do something that is infringing with a collaborator. But an offer for sale is an infringing act. You're saying that until there's an infringing act, there can't be any declaratory judgment. That's not what the cases say. Your Honor, this is so far away that there is no reasonable apprehension, especially when Benetech has never sued. Well, now you're talking about a different prong. It is true that I don't believe it satisfies either prong of the Declaratory Judgment Act's requirement. But the other point that I was getting at when I said that there were two issues, the one being that if you're going to put this into an IND, you are going to have, this is going to be reasonably related, because this is a new technology and it's quite reasonable you would put this information in. But, Your Honor, when this suit was filed, there was no jurisdiction. This Court has repeatedly said you can't go nunk-pro-tunk. What do you mean there was no jurisdiction? I don't understand that. The Supreme Court didn't change the law. Just tell me why was there no jurisdiction? You sued them. They counter-claimed. Where's the lack of jurisdiction? They were from the same harbor. They filed their 12B motions because they said there's no jurisdiction. There was indeed no jurisdiction due to the understanding… Why did you sue them? At the time it was reasonable because we believed that there was jurisdiction. We believed, as the Federal Circuit did, that Integra was a case that… Was more limited. Excuse me? That the safe harbor was more limited, yes. Yes, was more limited. And based on that reasonableness that we had and the Federal Circuit also had, we, the law firm that preceded us filed the suit. I don't want to confuse the record, but we actually didn't file a suit, but Benetech filed a suit based on that reasonableness. However, the Supreme Court indicated that this had no jurisdiction. It could have been dismissed at that point. This Court has repeatedly said that you cannot go nunk-pro-tunk to create jurisdiction. This Court has, even when the case has reached the Federal Circuit appeals stage, after a full trial, this Court has dismissed it. But Judge Dyke is saying, to the extent they were experimenting on animal products, you did have jurisdiction. Your Honor, they indicated… Merck is not dealing with animal products. They indicated in the briefing that they provided Judge Farnam on July 13, 2004, that all the activities were for an IND, an Investigational New Drug, application to the FDA, and that no new product was going to occur until at least 2012. And if they knew of animal use then… But that was a couple of years ago, right? I mean, they've come up with a new affidavit talking about research for animal products, right? They have provided an affidavit that indicates that they were talking about a nondisclosure or confidentiality. Well, it's more than that, isn't it? That declaration seems to indicate it's very limited. Well, where's the declaration? The declaration is at 8-14-08 to 14-13, Your Honor. They were doing animal research at the time of your dismissal. Have you agreed that you would not sue them based on that research activity? We would not sue them for any research that was going on prior to the dismissal, Your Honor. So what's the difference between a dismissal with prejudice of your action and what you've done? It would seem like there is little difference in dismissal with prejudice for those claims that were brought and what has happened. The only question would be that if there was no jurisdiction, the court could not rule on the merits and could not necessarily dismiss with prejudice, but that's... But the effect of what you've done is a dismissal with prejudice. Exactly, Your Honor. And if they were doing animal research as of the time of your dismissal, you're barred from suing based on that type of research. We would not sue for animal research that was done at the time of the dismissal, Your Honor. But what they're saying is that they're about to commence it, and that's the declaration that you're referring to. They say we're about to commence animal product research. And are you saying that you won't sue them for any animal product research that they conduct now? Your Honor, we believe that... What's the answer to that? Are you saying that you will not sue them for any animal research product that they begin now? Are you saying, will we never sue them on animal research? If you're saying that, I can't make that commitment that we won't be doing that ten years from now. Well, what about, suppose they start research for an animal product tomorrow. Tomorrow. Are you saying you won't sue them on that? Your Honor, Benetech has... Now, what's the answer? The answer is, I highly doubt that we would be suing anyone in the near future. But you're not promising not to sue them for animal product research that they begin tomorrow. Your Honor, we don't intend to sue them at this point, but we don't know... But you're not promising not to sue them for animal product research that they begin tomorrow. If they begin it tomorrow, Your Honor, we have not made that statement that we would forebear suing them. That's the problem. Your Honor, we don't believe that that's a problem because there is no jurisdiction, and there was never any jurisdiction when this suit was filed. You cannot create jurisdiction by having a declaratory judgment filed by the other side. Doesn't SuperSAC say that you don't need to make that commitment? That based on SuperSAC, future prospects are not a present apprehension of suit? You're absolutely correct, Your Honor. And don't you fit under SuperSAC pretty much on them? Pretty much this falls directly under SuperSAC. It says that the promise in SuperSAC does not cover products that they may make, sell, or use in the future. But as our cases have made clear, the second part requires that the putative infringer have present activity. It's only present activity we're talking about when we're talking about the declaratory judgment standards. Yes. And under the present standards, there's no reason to believe there's any problem with either of the prompts? That is correct, Your Honor. Is that your point? Thank you. Well, what about the statement in SuperSAC at 1059 that Chase, of course, has never contended it's already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe? Your Honor, that particular statement in Chase was never addressed by this court in the sense that the statement that they are taking meaningful steps, that would, of course, depend on what is meant by meaningful steps. If meaningful steps is I'm going and talking about a non-confidentiality agreement that I haven't talked about technology, that is so far from a product, so far from any kind of use, that it does not raise any apprehension, especially it doesn't raise any apprehension when the Supreme Court has already said, if you're going to put it in your IND, it is reasonably related. And in this particular case, they made specific statements to the district court judge that they were going to put all this into their IND. To allow them now to back off and say we're only going to put some material in, first, would allow them to retract the statement against interest, but second, it does not seem as though it's rational that if you're going to provide something to the FDA, what you're really going to be doing is providing as much information to the FDA about an entirely novel product as you can. What if tomorrow Nucleonics announced we are engaging in animal research, and with the desire to have a product on the market shortly, and because of some claims by Benetech or some activities it's undertaken in the past, at the same time we're making this announcement, we're filing a declaratory relief action. Would that action be viable? That they would ask for a declaratory relief action? They had a reasonable apprehension that since they're now doing animal research and planning to have a product, they're in apprehension of a suit from Benetech? Not at all, Your Honor, because Benetech has never sued companies that are just in the animal realm. Benetech has an agreement with another company. They co-own this patent with CSIRO. If you look at that agreement, and that agreement is at A1533, it defines the human field, it defines commercialized, and it defines exploit. And taking those definitions and those explanations into consideration, it would appear as though CSIRO would bring any kind of a suit for that type of an animal action. Benetech simply does not have those sticks of the bundle of rights to make those calls that they're going to sue somebody, and that was the reason that we pointed out in our brief that if this is true, that they are going into the animal field, then we would have to have CSIRO join because we're no longer in that bundle of rights that we possess. That portion of the appendix, A1533 and A1534, points out that Benetech's rights are only in the human field, in animals that are used in the human field in order to get your regulatory approval. So why don't you make a promise that you won't sue them? You're not willing to do that. Because that is—we co-own it, and we cannot make promises for what CSIRO would do. Okay, Mr. Chambers, your time has expired. Thank you. Thank you. Mr. Leith, can I just read one thing out of SuperSAC? The residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction. The district court properly dismissed for lack of jurisdiction. And the difference there is that section 1059 where there was no evidence that there were meaningful preparations going forward, or any evidence of anything going forward. The residual possibility, the court says, of a future infringement suit. Kind of sweeping language there. Again, that patent was not of this type where they're attacking actual research. This was more related to products. Here you have actual research that can come within the realm of infringement, and that can happen tomorrow. Could come. It's a possibility. Residual possibility. Well, they said it is infringement. Where is the evidence that Benetech has been concerned about animal research? Well, in their complaint, which is at A71, they say they have all right and title to this patent. When they sued us, in their statements to the court, they accused our activity, even though it was animal activity going to defend ultimately human studies, at A1450 they accused work relating to mice and rabbits of infringement. Related to humans, though. That led to humans, but the subsequent declaration relates to work that would go to purely veterinary efforts. That's a pretty vague declaration, isn't it? I don't think so. I mean, there's no definite plan set forth in that declaration. There were actual talks engaged in, and as I understand it... Does that sound like a residual possibility of a future infringement suit? No, I don't think it is. I think the difference is that there was truly no evidence there, and the possibility that some different product, that might be different from what was being walked away from by the patent... And there's no evidence here either? No, there is. There is the actual discussions with people, and as I understand it, the continuing efforts in that relation. And so... Isn't that hearsay in the legal terminology? No, I understand they made an argument that it's hearsay. It's a sworn declaration by the person who actually had engaged in those discussions and who was overseeing that research and was pushing that research forward. There was no actual in-court hearing on this at all, so to say it's an out-of-court statement, everything was. And I don't know what other kind of declaration and what other kind of evidence he would put in against the motion to dismiss. On this question of the animals, the statute itself is explicit, 271E1. It says it shall not be an act of infringement other than a new animal, drug, or veterinary biological product. It's exactly this thing that is excluded from a safe harbor. And so, SuperSAC, I think, is different because, again, when you look at the actual covenant, as you heard relating to his covenant, he says anything before this date we will not sue. But the exact same activity the day after is still open. There's no promise. Well, before James's... Excuse me. Is that what he said? I thought he said if it was going on before, they weren't going to sue him. If it was going on before a certain date, the date of dismissal. But that exact same activity following the next day is there's no promise on it. That's not what I understood, but maybe I'm wrong. That's the way I understood it. I think SuperSAC is different. It says very clearly at 1057 that unconditionally promise not to sue in the future on the patents ensued. That's a big difference because all the cases say that once you've been sued for infringement, there's necessarily jurisdiction over the counterclaim for invalidity. And the question is, has that been divested? And the only way to divest it, really, is with a full covenant not to sue on the future acts as well. Before James there had been a trial, though, correct? Before James? Yes. There had been a full trial. There had been a trial. A finding of infringement. A finding of non-infringement. I think in some sense Fort James is a weaker case for jurisdiction than this one because in Fort James you knew to a certainty that that particular embodiment technologically did not infringe. Here you don't know that. Here you simply have a safe harbor where you will come back out. And with respect to animals, you have no safe harbor. And so, as I say, they have used this. One other thing in the record of interest, he cites this commercialization aspect where he says that they don't have the right to sue on animals. Again, they did sue. Their complaint at A71 says they have all right and title. And if you look at A1540, which is the litigation rights, very different from the commercialization rights, that section, A1540 on, talks very clearly about them having the right to sue on co-owned patents, period. And this is a co-owned patent. So they've sued on it. They've accused animal activity of infringing. And as I heard and as I understand it, there is no covenant not to sue going forward on that animal activity or on the human activity that shows up. Very different from SuperSAC. SuperSAC had a specific finding by the district court that there would be no suit on that type of technology going forward. This type of technology, they've never said we don't infringe. They've never said we don't sue. You know, I'm looking at SuperSAC and it's talking about SuperSAC's promise not to sue is too indefinite. They didn't promise that they wouldn't sue again. SuperSAC had a very indefinite promise. I look at 1057 when you sit down, or your time's expired, and I think you'll see that there was plenty of, that SuperSAC had done nothing more than what Benetech's done in this case. The words I have are further plaintiff reports that it is unconditionally promised not to sue defendant in the future on the patents ensued, 1057. Thank you.